# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

RHONDA K. HAMMOND,      )
                         )
    Claimant,           )
                         )
v.                     )     Case No.  CV411-045
                         )
MICHAEL J. ASTRUE,      )
*Commissioner of Social Security,*  )
                         )
    Defendant.         )

## REPORT AND RECOMMENDATION

Rhonda K. Hammond appeals the Social Security Commissioner's denial of her application for disability benefits.   Doc. 1.   An ALJ evaluated her medical evidence and determined that, despite her hospitalization for an aneurysm and recovery from a related stroke, she failed to show that she was disabled.[1]   For the

---

[1]   It has been her burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period *of not less than 12 months....*" 42 U.S.C. § 423(d)(1)(A) (emphasis added). Her physical or mental impairment must be so severe that she is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

reasons set forth below, the Commissioner's decision denying benefits should be **AFFIRMED**.

## I.   BACKGROUND

Hammond was 44 years old as of the onset of her claimed disability.[2]    Doc. 13-2 at 23.[3]   In November 2006 she suffered a ruptured brain aneurysm and thus required a craniotomy.  After that she suffered a stroke.  Doc. 13-2 at 49.  As of June 2009, the ALJ summarized her condition: "status-post stroke as a result of a right opthalmic artery aneurysm on November 23, 2006 with residual right eye blindness." Doc. 13-2 at 18.

The administrative record here tracks Hammond's post-op progress.  Her treating neurologist, Dr. Jay Howington, released her to work as a U.S. Postal Service mail handler on January 25, 2007.  But on April 3, 2007, he deemed her unfit to do that because her depth perception was "extremely off" and thus "she was at risk for misreporting the mail. . . ." *Id.* at 18.

---

[2]   She is thus defined as a younger individual (age 18–49) on the alleged disability onset date. *See 2*0 CFR §§ 404.1563(c) and 416.963(c).

[3]   All documents referenced here have been "E-filed."  The Court is thus using the electronic pagination placed on the top of each page by the Court's CM/ECF software.

Still, a later physical examination and steroid injection, followed by a 2008 brain MRI and later physical examination by Kish Hughes, M.D., showed Hammond to be in better shape: "intact sensation and no weakness"; average exercise tolerance on a cardiac stress test; assessed for fibromyalgia and mild carpal tunnel syndrome "despite little objective evidence of this in the Record." *Id.* at 19.

Dr. A. Woodbury, a neurologist who treated her twice between March 26 and September 25, 2008, found otherwise, stating that she suffered moderate limitations -- which she now cites to challenge the ALJ's non-disability determination made against her. *Id.* at 19-20. Woodbury "found claimant capable of low stress jobs," *id.* at 19, though she would "need to take 10 minute unscheduled rest breaks at unpredictable intervals," and "would likely be absent more than three times per month." *Id.*

The ALJ assigned Woodbury's opinion no evidentiary weight for a variety of reasons, including: lack of treating records; his opinion was based on only two treatments; and his finding that she suffered moderate limitations using her hands was undermined by the fact that

objective evidence showed her carpal tunnel syndrome to be mild, etc. *Id.* at 20.

In contrast, the ALJ assigned greater weight to the opinion of Hammond's *treating* neurologist, Dr. Joel Greenberg, because "it is consistent with and corroborated by the medical and other evidence of record including [his] office notes." *Id.* Greenberg opined, *inter alia*, that her "prognosis was good and she was currently stable from a neurological point of view." *Id.* After evaluating the remainder of Hammond's evidence[4] and consulting with a Vocational Expert (VE), the ALJ determined that claimant can perform unskilled, light work. *Id.* at 22-29.  Hence, he concluded, she is not disabled.

## II.   STANDARD OF REVIEW

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284

---

[4]   Hammond testified that she could not function at her old postal service job, doc. 13-2 at 45-49, and is now on medical retirement after suffering a ruptured brain aneurysm and a post-craniotomy stroke. *Id.* at 49. But she drives a car about 30 miles a week. *Id.* at 52.  She also does some postal union work (mails out forms). *Id.* at 44. Nevertheless, she insists that most of her daily life activities (watching TV, walking, etc.), are severely curtailed because of ailments that include tremors, headaches, and pain in specific body areas like her chest. *Id.* at 49-63.  She suffers nerve damage and says that her doctor told her it renders therapy futile. *Id.* at 63.

F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159; *Lewis v. Astrue*, 2009 WL 464264 at *2 (M.D. Fla. Feb. 24, 2009).

This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991). Nor may it "reweigh the evidence or make new factual findings." *Brown v. Commissioner of Soc. Sec.*, 2012 WL 638789 at * 1 (11th Cir. Feb. 29, 2012) (citing *Dyer*, 395 F.3d at 1210).

Finally, the burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Her case is threaded through the five-step evaluation

process set forth in the Social Security Regulations.   20 C.F.R. §
416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009);
*Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).   At step one, the
claimant must prove that she has not engaged in substantial gainful
activity. *Jones*, 190 F.3d at 1228.

   At step two, she must demonstrate a severe impairment or
combination of impairments.   *Id.*   Then, at step three, if her
impairment meets or equals a listed impairment, she is automatically
found disabled.   *Id.*   If not, she must advance to step four, which
requires her to prove an inability to perform past relevant work.   *Id.*
If she cannot do that past relevant work, step five requires the
Commissioner to show that "there is other work available in
significant numbers in the national economy that the claimant is able
to perform." *Id.*

## III.  ANALYSIS

### A.    The ALJ's Determination

   Hammond's contentions are best understood by first reviewing
the ALJ's five-step analysis.   At step one, he found that she had not

engaged in substantial gainful activity since November 22, 2006.  Doc. 13-2 at 18.  At step two, he found that she "has the following severe impairments: blindness in right eye, disc bulges at L2-4, fibromyalgia, mild carpal tunnel syndrome and marijuana abuse (20 CFR 404.1520(c))."  *Id.*

But at step three, he determined that she did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 prior to November 22, 2006.  Doc. 13-2 at 22.   At step four, he determined that she was unable to perform past relevant work  as a mail handler -- the only job she had ever had, and had held for 17 years. *Id.* at 42-43.  But he then consulted a VE, who testified that she could perform unskilled light work such as "Parking Lot Cashier; Office helper and Counter Clerk."  *Id.* at 29; i*Id.* at 68-70. That was consistent with Dictionary of Occupational Titles (DOT) information -- an aid the Commissioner can use in such cases.[5]  *Id.*  at

---

[5]  The DOT "provides occupational information on jobs in the national economy" but "is not comprehensive," nor is "the sole source of admissible information concerning jobs." *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 938 (11th Cir. 2011) (quotes and cite omitted).

29.  Hence, the ALJ concluded, Hammond is "not disabled" and thus not under a disability. *Id.*

## B.   Hammond's Claims

Hammond contends that the ALJ's opinion is not supported by substantial evidence.   Specifically, he erred by: (1) discounting Dr. Woodbury's opinion, doc. 15 at 10-12; (2) failing to consider Dr. Woodbury's opinions under the factors set forth "in 20 C.F.R. § 404.1527(d)(2)-(6)," doc. 15 at 13; (3) giving "greater weight" to her treating neurologist, Dr. Greenberg, *id.* at 13-14; (4) ignoring Greenberg's findings of weakness of the left side of her body and other ailments; *id.* at 14; (5) failing to give good reasons for rejecting Greenberg's opinions on claimant's manipulative limitations and her resulting attention/concentration limitations; and (6) relying on part of Greenberg's opinion but not the rest. *Id.*

Hammond also faults the ALJ for concluding that her residual functional capacity (what the Commissioner can use to support a non-disability determination) was supported by "objective medical evidence" -- he is a layperson, she points out, so this is improper. *Id.*

8

Next, she claims that he failed to properly evaluate her credibility, *id.* at 15-18, and relied upon flawed VE testimony. *Id.* at 18-19.

## C. Analysis

All of Hammond's arguments fail.   First, much of her brief illuminates her November 2006 aneurysm treatment, which resulted in just six days of hospitalization and was regarded as successfully treated.   Doc. 15 at 3.   She cites complications and other ailments but references nothing that, under the "one-year" standard, *see supra* n. 1, demonstrates that the Commissioner's decision lacks substantial evidence.   That evidence showed a residual functioning capability despite an assortment of ailments (carpal tunnel syndrome, small disc bulges in her back -- and it obviously did not help that claimant persisted in smoking marijuana three times per week).   Doc. 13-2 at 19.

She also expends much of her argument decrying the ALJ's rejection of Dr. Woodbury's findings.   To that end, she cites the "treating physician rule"[6] in insisting that the ALJ failed to give proper

---

[6]  As the Eleventh Circuit has explained:

evidentiary weight to Dr. Woodbury's opinion.  Doc. 15 at 10-11.  She faults the ALJ, for example, for rejecting Woodbury's report as contradictory because he said she had a 6 to 7 fatigue factor.  Yet, he failed to list fatigue as one of her primary symptoms, nor indicate whether her marijuana use contributed to her fatigue.  *Id.* at 11.   Also, she contends, the ALJ did not give "controlling weight" to Woodbury's "treating physician" opinion, as required by 20 C.F.R. § 404.1527(d)(2).  Doc. 15 at 12-13.  Plus, the ALJ should have requested more records from Woodbury to address such gaps.  *Id.* at 10-11.

---

In determining whether a disability exists, the ALJ must give the opinion of the treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). This is true even if the physician did not treat the claimant until after the relevant period. *See Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir.1983), superseded by statute on other grounds, as recognized in *Hand v. Heckler*, 761 F.2d 1545, 1548 n. 4 (11th Cir. 1985). The ALJ is not, however, required to give controlling weight to issues reserved for the Commissioner. See 20 C.F.R. § 404.1527(e).

*Gainous v. Astrue*, 402 F. App'x. 472, 474 (11th Cir. 2010) (ALJ's failure to give controlling weight to the opinion of a SSB claimant's treating physician was supported by good cause; medical evidence contradicted the physician's opinion, and the ALJ believed that the physician's opinion was contradicted by the activities the claimant performed after the expiration of her insured status, citing two examples); *see also Copher v. Comm'r. of Soc. Sec.*, 429 F. App'x 928, 930 (11th Cir. 2011) (ALJ properly found that treating neurologist's opinion was not entitled to controlling weight because it was inconsistent with other substantial evidence in the record, including physician's own records); 3 Soc. Sec. Law & Prac. § 37:88 (Nov. 2011).

Hammond is correct on the legal standards, just not on her complaint about how the ALJ applied them. "Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians' [opinions] are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2) & (5)). Here Dr. Woodbury was an examining physician. Doc. 13-2 at 20.

But an ALJ is free to accord more or less weight to such a source if there is good cause to do so. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). He need not give the physician's opinion controlling weight. Nor is that physician's opinion dispositive, since the determination of disability is reserved to the commissioner. *Garred v. Astrue*, 2010 WL 2412128 at * 1 (11th Cir. June 16, 2010); 3 SOC. SEC. LAW & PRAC. § 37:88 (Nov. 2011). And good cause exists for rejecting a treating physician's opinion when it is not supported by the evidence, the evidence supports a contrary finding, or it is conclusory or

11

inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *see Crawford*, 363 F.3d at 1159 ("A treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'"). Also, an ALJ need not discuss each 20 C.F.R. § 404.1527(d)(2) factor, but need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Bussell v. Astrue*, 2012 WL 718995 at * 3 (10th Cir. Mar. 7, 2012) (quotes and cite omitted).

Here the ALJ spent considerable time and effort explaining why he did not give Dr. Woodbury's opinion controlling weight.  Doc. 13-2 at 20-21. It is not necessary to recount every last finding, as all that need be shown here is substantial evidence as based upon correct legal standards.  The ALJ's recitation suffices on that score.  *Id.* (recounting lack of treatment records, a claim that Hammond suffered a "moderate limitation using her hands even though the objective evidence shows her carpal tunnel syndrome is mild"; she does have impaired eyesight, yet she is able to drive; and her pain and physical limitation claims were negated by: (a) Dr. Greenberg's 2008 finding

that she suffered only from a "very minor left hemiparesis with no appreciable appendicular ataxia; (b) Dr. Hughes's 2008 physical examination revealing intact sensation and no weakness; (c) a 2008 "normal" venous study; and (d) Hammond's cane-less, crutch-less ambulation).[7] *Id.* at 26.

The Court also rejects Hammond's argument that the ALJ should have developed more medical evidence.  First, "[t]hroughout the process, the burden is on the claimant to introduce evidence in support of his application for benefits.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)." *Siverio v. Comm'r of Soc. Sec.*, 2012 WL 573588 at * 1 (11th Cir. Feb. 23, 2012); *Chereza v. Comm'r of Social Sec. Admin*, 379 F. App'x. 934, 941 (11th Cir. 2010) (the "claimant bears the burden of producing evidence of her disability").

Second, while the ALJ "'has a duty to develop the record where appropriate[, he] is not required to order a consultative examination as long as the record contains sufficient evidence for the

---

[7]  The ALJ properly applied "three-part pain test by finding that there was evidence of an underlying medical condition, but that the objective medical evidence did not confirm the severity of the alleged pain arising from that condition." *Jarrell*, 433 F. App'x at 814 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

administrative law judge to make an informed decision.' *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007)." *KDB ex rel. Bailey v. Soc. Security Admin., Comm'r*, 444 F. App'x 365, 368 (11th Cir. 2011); *Dillard v. Astrue*, ___ F. Supp. 2d ___, 2011 WL 6740417 at * 8 (S.D. Ala. 2011).

Here, the ALJ had before him extensive medical records from 2004 through 2009. Doc. 13-7 at 3-112; doc. 13-8 at 2-24; doc. 13-9 at 3-68; doc. 13-10 at 2-65. This includes hospital and "neurological institute" records, as well as those from doctors Howington, Hughes and Greenberg. That evidence authorized the ALJ to determine that despite Hammond's health problems and resulting limitations, she nevertheless could function at the light duty work the VE identified. Dr. Greenberg, for example, opined that her prognosis was good and that she was currently stable from a neurological point of view. And when Greenberg last saw her, she felt that her headaches were "under good enough control that she does not think she requires any additional medication." Doc. 13-10 at 58.

Too, Hammond's most recent MRI showed no other acute abnormality given her aneurysm history. *Id.* at 61-63. All of her

aneurysm-related issues had been resolved by February, 2009.   Doc. 13-2 at 22.  And, her stroke, multiple sclerosis, etc. issues constituted nonsevere impairments that did not significantly limit her ability to perform basic work activities.  *Id.*  What Hammond ignores is the simple fact that one may be afflicted by a variety of ailments yet still function because they are, singularly and cumulatively, simply not *that* incapacitating.   Many persons so afflicted function in, for example, parking lot attendant jobs.

The ALJ did not "pick and choose" evidence, as Hammond also complains, doc. 15 at 14, but in fact weighed it (his duly authorized function).  He cited Greenberg's opinion in favor of Hammond at points -- for example, that Hammond had a 2 to 3 level of pain and a 3 to 4 level of fatigue. Doc. 13-10 at 52.  Yet, the ALJ noted, that was contradictory and "these low-rated symptoms" would not "'constantly' interfere with claimant's ability to pay attention and concentrate." Doc. 13-2 at 21.

Plaintiff also argues that the ALJ improperly weighed the opinion of Dr. Greenburg, her treating neurologist.  Doc. 15 at 11-15. The ALJ assigned greater weight to his opinion than Dr. Woodbury's

(both completed the same questionnaire, doc. 13-2 at 21).  Of course, medical doctors are not qualified to apply legal disability rules and regulations; the Commissioner is.  *Brown v. Comm'r Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011).  The ALJ found that Greenberg's opinion was entitled to greater evidentiary weight because it was consistent with and corroborated by the medical and other evidence of record, which he extensively detailed.  Doc. 13-2 at 21.  *That* is all that is required to satisfy the substantial evidence standard.  *Wilcox v. Comm'r of Soc. Sec.*, 442 F. App'x 438, 440 (11th Cir. 2011) (ALJ did not err by giving greater weight to medical opinion of nontreating specialist than to claimant's treating physician; ALJ's articulated reasons for failing to accord controlling weight to treating physician's opinion were supported by substantial evidence).

Hammond also complains that the ALJ failed to properly evaluate her credibility.  Doc. 15 at 15.  Again, the substantial evidence standard applies here.[8]  And anyone can exaggerate in quest

---

[8]  *Compare Davis v. Comm'r Soc. Sec.*, 2011 WL 6337654 at * 5 (11th Cir. Dec. 19, 2011) (substantial evidence did not support ALJ's finding that claimant was not credible; while ALJ found inconsistencies, claimant's reliance on family members to take care of her children and housework while she rested did not refute her claim

of entitlement dollars. That is one of the reasons why ALJ's are authorized to reject testimonial claims unsupported by objective medical evidence. *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (substantial evidence supported ALJ's rejection of claimant's pain testimony; among other things, objective medical evidence did not confirm severity of alleged pain arising from that condition); *Solomon v. Comm'r of Soc. Sec.*, 430 F. App'x 853, 854 (11th Cir. 2011) (substantial evidence authorized ALJ to reject claimant's testimony "that pain and fatigue caused by scleroderma, rheumatoid arthritis, carpal tunnel syndrome, and migraine headaches prevented him from resuming his job as a commercial truck driver," as ALJ could properly find that it was contradicted by claimant's own statements and objective medical evidence).

---

that she did not like to socialize), *with Kuhl v. Comm'r Soc. Sec.*, 2011 WL 4867667 at * 2 (11th Cir. Oct. 14, 2011) (ALJ did not fail to assess claimant's credibility; although he did not make explicit credibility finding or specify weight given to her testimony, he appeared to have credited her testimony, which was otherwise not critical to her claim because she did not testify to any facts indicating that her depressive symptoms "significantly limited" her ability to do basic work activities); *Wilcox* 442 F. App'x at 440 (ALJ's credibility finding was supported by substantial evidence, and ALJ articulated adequate reasons for discrediting social security disability claimant's subjective testimony).

Here Hammond, for example, alleged disability in part based on numbness in her left upper extremity, but in February 2009 Dr. Greenberg detected only a "very minor" left hemiparesis (weakness on one side of the body) with no appreciable appendicular ataxia (impairment of the ability to perform smoothly coordinated voluntary movements). Doc. 13-10 at 59.  And an earlier March 2008 examination by Kisha Hughes, M.D., revealed intact sensation and no weakness. Doc. 13-9 at 9 ("The patient has no weakness according to the physical exam and sensation appears to be intact.  There is a possibility that there was some kind of referred pain that is a result of [claimant's 2007] stroke, but we will continue to monitor.").  And even though Hammond said she is blind in one eye, she also said that she can drive 30 miles per week.  And again, a March, 2008 Doppler venous study of her upper bilateral extremity was normal. Doc. 13-9 at 30.  Plus, Hammond used no cane or crutches to ambulate, despite an alleged numbness which the ALJ documented as "very minor" in nature. Doc. 13-2 at 23; doc. 13-10 at 59.  This constitutes substantial -- hence, adequate -- evidence to uphold the ALJ's rejection of her credibility, and thus her testimonial evidence.

Finally, Hammond argues that the ALJ could not rely on the VE's testimony because the ALJ's hypothetical question to him was inadequate -- it relied upon the ALJ's mere (and impermissible) "lay interpretation of the medical record." Doc. 15 at 18-19. This argument also fails. ALJs routinely incorporate their own (hence, lay) interpretation of a claimant's limitations -- as based on, *inter alia*, medical records and claimed medical ailments and setbacks -- into their hypotheticals. *See, e.g., Jarrell*, 433 F. App'x at 815 (ALJ included all of claimant's mental and physical limitations in his hypothetical questions to VE; ALJ's questions assumed that claimant was limited to work involving only simple, routine, repetitive tasks and thus adequately accounted for her mild mental limitations, and medical records supported ALJ's findings that claimant's depression and anxiety only caused mild limitations, as claimant testified that she had never been hospitalized for mental health reasons, had no history of psychiatric problems, and believed origin of her depression was her then-current family situation).

Indeed, such action constitutes the *essence* of what ALJ's do. And no one ever claimed perfection on that score -- Congress is free to additionally fund this entitlement program to pay for all ALJs to be

medical doctors if it wants -- nor is perfection required.  For that matter, when an ALJ does deploy a hypothetical, he "is not required to include in the question claims of impairment that he has found unsupported. *Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)." *Pritchett v. Comm'r Soc. Sec.* 315 F. App'x 806, 813 (11th Cir. 2009). Here the ALJ's hypothetical was comprehensive and fit the record then developed. It properly hewed to established guidelines.  *See* doc. 13-2 at 66-70.  And it fairly captured plaintiff's credible limitations and abilities.

## IV.  CONCLUSION

Based on the foregoing, the Commissioner's decision denying benefits should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this __19th__ day of March, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA